## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                                      )
**SCOTT J. BRODIE,**                    )
                                                      )
            **Plaintiff,**                       )
                                                      )
      **v.**                                         )            **Civil Action No. 12-1136 (RMC)**
                                                      )
**DEPARTMENT OF HEALTH AND**   )
**HUMAN SERVICES,** *et al.***,**         )
                                                      )
            **Defendants.**                   )
_____ )

## OPINION

Dr. Scott J. Brodie was debarred in 2010 from participating in federal contracts or grants for seven years because of his medical research misconduct between 1999 and 2001. He complains here that the Department of Health and Human Services; Kathleen Sebelius, Health and Human Services Secretary; David Wright, Director of the Office of Research Integrity; and Nancy Gunderson, Health and Human Services Deputy Assistant Secretary (collectively, "Defendants"), violated his rights. Dr. Brodie previously sued these same Defendants, challenging the decision to debar him. *See* Compl., *Brodie v. U.S. Dep't of Health & Human Servs.* ("*Brodie I & II* Compl."), Civ. No. 10-544 (D.D.C. filed April 2, 2010) [Dkt. 1]. In this case, Dr. Brodie again challenges the debarment decision, recasting his claim and arguing that the Office of Research Integrity violated *Brady v. Maryland*, 373 U.S. 83 (1963), by not preserving and producing his laptop during the administrative debarment proceedings. Because this suit is barred by *res judicata* and collateral estoppel, summary judgment will be granted to Defendants. The Court also concludes that *Brady* did not apply to the prior proceedings.

# I.  BACKGROUND

## A.  Plaintiff's Claims and Facts Relevant to Instant Dispute

Dr. Brodie is a molecular pathologist who was an assistant professor in the Department of Laboratory Medicine at the University of Washington.  Compl. [Dkt. 1] ¶ 8. After an investigation in September 2002, the University found that Dr. Brodie had committed fifteen instances of research misconduct in grant applications for federal Public Health Service ("PHS") funding and in projects receiving PHS funding.  *Id.* ¶¶ 9–10; Defs.' Mot. Dismiss or for Summ. J. [Dkt. 13] ("Defs. Mot.") at 7–8.[1]  The University sent its final report to the Office of Research Integrity ("ORI") at the Department of Health and Human Services ("HHS") so that ORI could conduct its own independent investigation into the matter.  Compl. ¶ 10.  *See generally* 42 C.F.R. § 93 (setting forth PHS policies on research misconduct).  ORI also concluded in September 2008 that Dr. Brodie had committed fifteen instances of research misconduct and recommended that he be debarred for seven years.  Compl. ¶ 11; Defs. Mot. at 8–9.  ORI's findings were based on evidence that Dr. Brodie "intentionally and knowingly published or attempted to publish fabricated or falsified images in Public Health Service . . . grant applications, several published papers, manuscripts, and PowerPoint presentations."  Defs. Mot. at 7; *see also* Compl. ¶ 11.

When Dr. Brodie contested the proposed debarment, an Administrative Law Judge ("ALJ") was assigned to hold a hearing to review ORI's findings.  Compl. ¶ 12.  HHS processes call for an ALJ to make findings of fact upon which an HHS Debarring Official then relies in reaching a final decision.  *See* 42 C.F.R. § 93.523.  During discovery, before the

---

[1] Plaintiff has no substantive dispute with the facts in Defendants' Motion to Dismiss or Alternatively for Summary Judgment.  *See* Mem. Supp. Pl. Opp. & Cross-Mot. Summ. J. ("Pl. Opp.") [Dkt. 14-1] at 1.

administrative hearing, Dr. Brodie made various production requests that referenced his personal laptop computer, which the University of Washington had taken during its investigation.  Compl. ¶¶ 28–30.  Dr. Brodie claims that without his laptop, he "had no way to compare the original data to the images that ORI deemed suspect to make any conclusions as to whether those images were representative of the original data, and thus, were not falsified or fabricated as ORI alleged."  *Id.* ¶ 40.  When Defendants did not produce any data from that laptop, despite Dr. Brodie's requests, he assumed his laptop had been "lost, misplaced, or destroyed."  *Id.* ¶ 34.  After discovery, the ALJ granted ORI's Motion for Summary Disposition.  *Id.* ¶ 15.  Giving Dr. Brodie the "benefit of all doubt," and assuming that Dr. Brodie did not *create* any of the false images, the ALJ nonetheless found that Dr. Brodie published the false images and, thus, committed research misconduct.  Defs. Mot. at 14 (quoting Administrative Record ("AR") [Dkt. 12-1] at 3759; AR Part 2 ("AR(2)") [Dkt. 12-2] at 8).  The ALJ concluded: "The only reasonable inference that I can draw from the undisputed facts of this case is that [Plaintiff] knowingly and intentionally, and on a massive scale, published or attempted to publish false or fabricated information that was material to the research that he performed."  AR at 6.

The HHS Debarring Official accepted the ALJ's recommendation in April 2010 and debarred Dr. Brodie from participating on federal contracts or grants for seven years.  Dr. Brodie then filed suit in *Brodie v. U.S. Department of Health & Human Services*, Civil Action Number 10-544, which was assigned to the Honorable Paul Friedman and later reassigned to the Honorable James E. Boasberg of this Court.  In his complaint, Dr. Brodie challenged ORI's decision to debar him and named the same four defendants he has named here—HHS, Secretary Sebelius, ORI Director Wright, and Deputy Assistant Secretary Gunderson.

The first district court case resulted in two published opinions, one by Judge Friedman denying Dr. Brodie's motion for preliminary injunction, *Brodie I*, 715 F. Supp. 2d 74 (D.D.C. 2010), and the second by Judge Boasberg granting Defendants' motion for summary judgment, *Brodie II*, 796 F. Supp. 2d 145 (D.D.C. 2011). In the complaint at issue in *Brodie I* and *II*, Dr. Brodie claimed that his debarment violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, and his Fourth and Fifth Amendment rights. *Brodie I & II* Compl. ¶¶ 56–84. Dr. Brodie moved for a preliminary injunction against his debarment, pending the outcome of the district court proceeding. Following a hearing, Judge Friedman denied the motion on June 4, 2010, basing his decision primarily on the conclusion that Dr. Brodie "[had] not yet demonstrated a likelihood of success on the merits—let alone a substantial likelihood— sufficient to weigh in favor of the issuance of a preliminary injunction." *See Brodie I*, 715 F. Supp. 2d at 84.

The case was reassigned to Judge Boasberg, who granted Defendants' motion for summary judgment in July 2011. *See Brodie II*, 796 F. Supp. 2d at 148. Central to Judge Boasberg's opinion was the ALJ's conclusion that Dr. Brodie would be liable for research misconduct, even assuming *arguendo* that he did not make the images himself, "because, at the very least, he published images that were false." *Id.* at 154. Judge Boasberg concluded that the ALJ's decision was not arbitrary or capricious, rejecting all of Dr. Brodie's various arguments challenging the proceedings before the ALJ. *Id.* at 150–56. Judge Boasberg also granted summary judgment to Defendants on Dr. Brodie's Fourth and Fifth Amendment claims. *Id.* at 156. Importantly for present purposes, in *Brodie I* and *II*, Dr. Brodie did not claim that ORI failed to produce material evidence from his personal laptop, and he did not file an appeal.

In August 2011, Dr. Brodie listened to an audio recording from an ORI research compliance conference that took place on April 22, 2010, in which the speaker, a Senior Attorney in ORI's Office of the General Counsel, referred to Dr. Brodie's case and referenced his "laptop computer." Compl. ¶¶ 17–19. The Senior Attorney described how ORI was able to find Dr. Brodie's fifteen instances of research misconduct upon which it based its debarment decision. She stated that ORI "actually had the data from his . . . *laptop* computer, the lab computer and alike so that we could compare the differences." *Id.* ¶ 18. Knowing that no information had been produced from his laptop computer during the administrative proceedings, Dr. Brodie petitioned the ALJ to reopen his debarment decision. *Id.* ¶ 20. Dr. Brodie asserted that his laptop was "essential to his case" and, assuming after the ORI conference that ORI did possess the laptop but did not produce it to him, that the failure of ORI to produce his laptop in discovery amounted to a violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963) ("[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.").[2] Defs.' Mot. at 17. ORI responded that the attorney had misspoken at the conference and that ORI had never requested or received Dr. Brodie's laptop during the administrative debarment proceedings. *Id.* at 17–18; Pl. Opp. at 4. After the ALJ denied Dr. Brodie's request to reopen the debarment proceedings, stating that he did not have the authority to do so, Dr. Brodie appealed by letter to the HHS Debarring Official. Compl. ¶ 20.

---

[2] There are three elements to a *Brady* claim, which implicates Due Process rights under the Fifth or Fourteenth Amendments: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the [government], either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).

Dr. Brodie asked the Debarring Official to reopen the debarment proceedings due to the "newly discovered material evidence" that ORI had never even requested his laptop from the University of Washington.  Defs. Mot. at 18–19.  Dr. Brodie emphasized that "ORI revealed that it had never *received* the laptop or its contents from [the University of Washington] during the course of its investigation.  This revelation was new and showed that material evidence had not been obtained . . . by ORI, despite Dr. Brodie's discovery requests."  *Id*.  The Debarring Official denied Dr. Brodie's request for multiple reasons.  First, the Official found that the transcript from the ORI conference was not enough to constitute "newly discovered evidence" that either the University of Washington or ORI possessed the laptop computer.  *See* AR(2) at 455.  The Official reasoned that Dr. Brodie did not exercise reasonable diligence during the discovery process because he never moved to compel ORI to obtain and produce the laptop.  *See* AR(2) at 456.  Second, the Official found that the laptop was not material to the finding of misconduct because the ALJ based his decision on Dr. Brodie's publication of the falsified images, assuming that any records on the laptop would reveal that Dr. Brodie did not create the false images.  Defs. Mot. at 21.  Finally, the Official found that *Brady* did not apply.  *Id*.  The Official noted that *Brady* traditionally applies in criminal prosecutions and extends to civil matters only when the consequences of civil litigation are similar to those of a criminal conviction.  AR(2) at 457.  She thus concluded that *Brady* and its progeny "are inapplicable to administrative matters such as this one . . . [where] merely money or damage to reputation is at stake."  *Id.*  When the Official denied Dr. Brodie's request, Dr. Brodie filed the instant action.

The instant Complaint contains three counts, all based on the claim that HHS violated *Brady* by not securing and producing Dr. Brodie's laptop from the University of Washington during the debarment proceedings.  *See* Compl. ¶¶ 49 (Count I), 60 (Count II), 70

(Count III).  Count I claims a violation of Dr. Brodie's due process rights under the Fifth

Amendment, Count II claims an APA vioation, and Count III is styled as a "Claim to Set Aside

Judgment under [Federal Rule of Civil Procedure] 60(b)."  Dr. Brodie asks the Court to vacate

his debarment, set aside the *Brodie I and II* decisions based on the "newly-discovered material

evidence" that HHS did not seek Dr. Brodie's laptop during discovery, order ORI to obtain and

produce data from Dr. Brodie's laptop, and direct ORI to conduct another hearing on culpability.

      Defendants move to dismiss or, in the alternative, for summary judgment.  They

argue that Dr. Brodie's current claims are barred by *res judicata* because Dr. Brodie could have

raised his *Brady* arguments in *Brodie I* and *II*.  Defs. Mot. at 32–34.  Defendants also contend

that collateral estoppel bars Dr. Brodie's claims because Dr. Brodie's laptop was immaterial to

ORI's original debarment decision, upheld in *Brodie II*.  Defs. Mot. at 30–32; *see also id.* at 4

(arguing that "by contending that his alleged laptop, if located, would be material to the finding

of research misconduct, Dr. Brodie is simply seeking to re-litigate an issue that already has been

decided adversely to him").  In the alternative, Defendants argue that *Brady* does not apply to

civil proceedings, except in unusual circumstances, so Dr. Brodie has not stated a cognizable

claim.[3]  *Id.*

      Dr. Brodie filed an omnibus opposition to the motion to dismiss and cross-motion

for summary judgment, arguing that he has conclusively established a *Brady* violation and that

the Court should immediately remand to ORI for further proceedings.  Pl. Opp. at 1, 21.

Defendants have filed a reply, Dkt. 17, and surreply, Dkt. 22; Dr. Brodie has submitted a reply,

Dkt. 20.  The matter is fully briefed and is ripe for decision.

---

[3] Because the Court concludes that summary judgment should be granted to Defendants due to
*res judicata* and collateral estoppel, and that *Brady* does not extend to debarment proceedings,
the Court does not reach Defendants' final argument that no violation of *Brady* occurred even if
*Brady* did apply to ORI proceedings.  *See* Defs. Mot. at 36–40.

## II. LEGAL STANDARDS

### A. Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "In a case involving review of a final agency action under the Administrative Procedure Act, 5 U.S.C. § 706, however, the standard set forth in Rule 56[ ] does not apply because of the limited role of a court in reviewing the administrative record." *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 89 (D.D.C. 2006); *see also Charter Operators of Alaska v. Blank*, 844 F. Supp. 2d 122, 126–27 (D.D.C. 2010); *Buckingham v. Mabus*, 772 F. Supp. 2d 295, 300 (D.D.C. 2011). Under the APA, the agency's role is to resolve factual issues to reach a decision supported by the administrative record, while "the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Sierra Club*, 459 F. Supp. 2d at 90 (quoting *Occidental Eng'g. Co. v. INS*, 753 F.2d 766, 769 (9th Cir. 1985) (internal quotation marks omitted)). "Summary judgment thus serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Id.* (citing *Richards v. INS*, 554 F.2d 1173, 1177 & n.28 (D.C. Cir. 1977)).

### B. Administrative Procedure Act

A reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see Tourus Records, Inc. v. DEA*, 259 F.3d 731, 736 (D.C. Cir. 2001). The basic legal tenets here are longstanding and clear: A reviewing court

8

"must consider whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 378 (1989) (internal quotation marks omitted).  At a minimum, the agency must have considered relevant data and articulated an explanation establishing a "rational connection between the facts found and the choice made." *Bowen v. Am. Hosp. Ass'n*, 476 U.S. 610, 626 (1986) (internal quotation marks and citation omitted); *see also Pub. Citizen, Inc. v. FAA*, 988 F.2d 186, 197 (D.C. Cir. 1993) ("The requirement that agency action not be arbitrary or capricious includes a requirement that the agency adequately explain its result.").  An agency action is arbitrary or capricious

> if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Id.*  Rather, agency action is normally "entitled to a presumption of regularity." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 97 (1977).

### C.  Jurisdiction and Venue

The Court has federal question jurisdiction over Dr. Brodie's statutory and constitutional claims.  *See* 28 U.S.C. § 1331.  Venue is proper in this Court under 28 U.S.C. § 1391(b) and 5 U.S.C. § 703.

## III. ANALYSIS

### A.  Construction of Count III of the Complaint

As a threshold matter, the Court must address Count III of Dr. Brodie's

Complaint in this case, which is styled as a claim for relief under Federal Rule of Civil Procedure

60(b).  That Rule provides for relief "from a final judgment, order, or proceeding" for reasons

listed in the Rule, including "newly discovered evidence that, with reasonable diligence, could

not have been discovered in time to move for a new trial under Rule 59(b)."  Fed. R. Civ. P.

60(b)(2).  Dr. Brodie has filed the instant Complaint citing Rule 60(b) instead of filing a motion

in Civil Action Number 10-544 before Judge Boasberg, as the plain language of Rule 60(b)

generally contemplates that a party will do.  *Id.* ("On *motion* and just terms, the court may relieve

a party . . ." (emphasis added)).  Dr. Brodie's tactical choice raises threshold issues of how the

Court should treat Count III and whether it even has jurisdiction.

The present version of Rule 60 expresses a preference for parties to seek relief

from a prior judgment by filing a motion in the prior case, but Rule 60(d) preserves the common

law right of parties to bring a so-called equitable "independent action" for relief.  *See* 11 Wright

& Miller, *Federal Practice & Procedure* § 2868 (3d ed. & Supp.) ("The normal procedure to

attack a judgment should be by motion in the court that rendered the judgment," but, "in theory

at least, the action may be brought in any court of competent jurisdiction.").  Rule 60's

preference that parties seek relief from judgment by motion in the original court does "not limit a

court's power to entertain an independent action to relieve a party from a judgment, order, or

proceeding."  Fed. R. Civ. P. 60(d)(1).  Still, litigants filing suit relying on Rule 60 as the basis

for an independent action face a high bar because an independent action is a "narrow avenue."

*United States v. Buck*, 281 F.3d 1336, 1341 (10th Cir. 2002); *see also United States v. Beggerly*,

524 U.S. 38, 46 (1998) ("Independent actions must, if Rule 60(b) is to be interpreted as a

coherent whole, be reserved for those cases of 'injustices which, in certain instances, are deemed sufficiently gross to demand a departure' from rigid adherence to the doctrine of *res judicata*." (quoting *Hazel-Atlas Glass Co. v. Hartford-Empire Co.,* 322 U.S. 238, 244 (1944))).  "Relief pursuant to the independent action is available only in cases 'of unusual and exceptional circumstances.'" *Barrett v. Sec'y of Health & Human Servs.*, 840 F.2d 1259, 1263 (6th Cir. 1987) (quoting *Rader v. Cliburn*, 476 F.2d 182, 184 (6th Cir.1973)).

      The independent action claim in Count III of the Complaint is based on the exact same theory of relief as Dr. Brodie's due process and APA claims.  *See* Compl. ¶¶ 66–71 ("Dr. Brodie has only recently discovered new exculpatory evidence that is material to his case, namely, that ORI did not produce his laptop computer because it had not secured such evidence from the University of Washington, despite Dr. Brodie's requests for it during the discovery stage of the debarment proceedings.").  It presents no unusual or exceptional circumstances.  The parties have briefed all three Counts alike on the understanding that they raise a single legal issue.  The Court agrees.  Accordingly, the Court concludes that Count III of the Complaint rises and falls with the other two Counts, and is barred by *res judicata* and collateral estoppel for the reasons set forth below.

### B.  Dr. Brodie's Claims Are Barred By *Res Judicata*

      Dr. Brodie has already complained in this Court about his debarment from federal contracts and grants.  While he claims his evidence (that ORI did not secure his personal laptop from the University of Washington during the administrative litigation) is new and material, the fact that no data was produced from this laptop during discovery is not new.  Rather, what is new is simply Dr. Brodie's interpretation and understanding of why the data was not produced originally.

"[U]nder *res judicata*, 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were *or could have been raised* in that action.'" *Drake v. FAA*, 291 F.3d 59, 66 (D.D.C. 2002) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (emphasis added)); *see I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co.*, 723 F.2d 944, 947 (D.C. Cir. 1983).  Courts apply a three-part test to determine whether *res judicata* applies:

> (1) Whether the claim was adjudicated finally in the first action; (2) whether the present claim is the same as the claim which was raised or which might have been raised in the prior proceeding; and (3) whether the party against whom the plea is asserted was a party or in privity with a party in the prior case.

*Youngin's Auto Body v. District of Columbia*, 711 F. Supp. 2d 72, 78 (D.D.C. 2010) (quoting *Patton v. Klein*, 746 A.2d 866, 869–70 (D.C. 1999)).

Having reviewed the record of *Brodie II*, the Court finds that *res judicata* bars all claims Dr. Brodie asserts here because all three elements of *res judicata* are met.  *See Youngin's Auto Body*, 711 F. Supp. 2d at 78.  Dr. Brodie does not contest the first and third elements, which are clearly satisfied: HHS's decision to debar Dr. Brodie was adjudicated finally on the merits by this Court in *Brodie II*, and all parties to this case are the same as in *Brodie I* and *II*.

The parties' dispute turns on the second element—whether Dr. Brodie is bringing a claim that either was raised or could have been raised in *Brodie II*.  Dr. Brodie argues that his current claims are distinct from those addressed in *Brodie II* because a *Brady* analysis was not a factor in the prior proceedings, and "this action turns on a new material fact that only came to light during the proceedings to reopen the debarment case—namely, that ORI did not secure the laptop from [the University of Washington] during the discovery process, despite Dr. Brodie's requests for it."  Pl. Opp. at 20.  Noting that Dr. Brodie referenced "believ[ing] during the

debarment proceedings that evidence had been withheld from him" in submissions to the ALJ,

Defendants respond that Dr. Brodie nonetheless never filed a motion to compel and never raised

any argument that *Brady* required production of his laptop.  Defs. Mot. at 32–34.  Because he

could have raised such an argument in the administrative litigation or in *Brodie II*, Defendants

argue that *res judicata* applies.

Two cases "implicate the same cause of action [if] they share the same 'nucleus of

facts.'"  *Drake*, 291 F.3d at 66 (quoting *Page v. United States*, 729 F.2d 818, 820 (D.C. Cir.

1984)).  To determine whether two cases share the same nucleus of facts, the Court considers

"whether the facts are related in time, space, origin, or motivation[;] whether they form a

convenient trial unit[;] and whether their treatment as a unit conforms to the parties' expectations

or business understanding or usage."  *Stanton v. D.C. Court of Appeals*, 127 F.3d 72, 78 (D.C.

Cir. 1997).

The Court finds that this case and *Brodie II* implicate the same cause of action

because they share the "same nucleus of facts," *i.e.*, those surrounding Dr. Brodie's debarment.

*See Drake*, 291 F.3d at 66.  Dr. Brodie contends that "during the 16-month course of the initial

debarment proceedings, ORI did not identify, mention or produce his laptop computer," Pl. Opp.

at 2, and that the data stored on his laptop computer "*was*, and *is*, critical to [his] defense of the

charges brought by ORI."  Pl. Opp. at 19 (emphasis added).  But he did not raise the issue of the

missing laptop before the ALJ or the court in *Brodie II*, as he attempts to do now, *see* Compl.

¶ 42.  Instead, he simply assumed that the laptop "was likely lost or destroyed."  Pl. Opp. at 2.

Contrary to Dr. Brodie's current argument, the supposed recent revelation that the laptop had not

been destroyed and *could* have been produced, even if accurate, changes nothing.  If Dr. Brodie

believed he needed the laptop for administrative proceedings or in litigation during the first

district court case, he should and could have raised the argument then.  *See* Pl. Opp. at 13 (listing discovery requests, but no motions to compel).

The fact that ORI never secured or produced data from Dr. Brodie's personal laptop during the administrative discovery process does not change the analysis.  Rather, it is Dr. Brodie's understanding of *why* the data was not produced that has changed.  *Brodie II* held that the Debarring Official's decision did not violate the APA.  Thus, the premise underlying Dr. Brodie's complaint here—that the HHS Debarring Official erred in concluding that Dr. Brodie engaged in research misconduct—has already been raised and rejected.  *See Natural Res. Def. Council v. EPA*, 513 F.3d 257, 261 (D.C. Cir. 2008) ("[C]laim preclusion is also intended 'to prevent litigation of matters that *should have been* raised in an earlier suit.'" (quoting *SBC Commc'ns Inc. v. FCC*, 407 F.3d 1223, 1230 (D.C. Cir. 2005)); *Mahmood v. Research in Motion Ltd.*, 905 F. Supp. 2d 498, 502 (S.D.N.Y. 2012) ("*Res judicata* bars new claims out of the same transactions regardless of whether they are winners or losers.  A party's second bite at the same apple may well be successful.  It will be barred under *res judicata* because the party already had one bite at the apple; not because the second bite would necessarily taste the same (or be decided the same way) as the first.").

Accordingly, the Court finds that *res judicata* bars the claims advanced by Dr. Brodie here.

### C.  Collateral Estoppel Bars Dr. Brodie's Claims

Apart from *res judicata*, collateral estoppel bars Dr. Brodie's claims because the issue of the materiality of his laptop—an essential underpinning of his *Brady* claim, *see United States v. Bagley*, 473 U.S. 667, 682 (1985)—was already decided against him by ORI and in *Brodie II*.  Put another way, the original debarment decision was explicitly based on the finding

that Dr. Brodie was responsible for research misconduct "even assuming Plaintiff did not make

the images himself . . . because, at the very least, he published images that were false." *Brodie*

*II*, 796 F. Supp. 2d at 154.

       "Under the [ ] doctrine of collateral estoppel, or issue preclusion, an issue of fact

or law that was actually litigated and necessarily decided is conclusive in a subsequent action

between the same parties or their privies." *Johnson v. Duncan*, 746 F. Supp. 2d 163, 168

(D.D.C. 2010).  When the determination "is essential to the judgment, [it] is conclusive in a

subsequent action between the parties, whether on the same or a different claim." *Consol.*

*Edison Co. of N.Y. v. Bodman*, 449 F.3d 1254, 1258 (D.C. Cir. 2006) (citation and internal

quotation marks omitted); *see Allen v. McCurry*, 449 U.S. 90, 94 (1980) ("Under collateral

estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision

may preclude relitigation of the issue in a suit on a different cause of action involving a party to

the first case.").

       The ALJ found that it was "irrelevant that others may have shared computers or

actually done the manipulations that [Brodie] falsely represented as products of his research"

because the ALJ "evaluated this case on the assumption that [Brodie] personally created *none* of

the false images and data."[4] Defs. Mot. at 31 (quoting AR at 3759, 3762; AR(2) at 8, 11).  Dr.

Brodie himself acknowledges the immateriality of the laptop to the decision.  *See* Pl. Opp. at 18

("[N]either party can point to any information that was derived from the laptop as the basis of

ORI's allegations of misconduct and thus it was plainly not a part of the initial

proceedings . . . .").  He instead repeatedly makes the conclusory assertion that the laptop will

---

[4] Throughout the immediate briefing, Dr. Brodie has carefully ignored the fact that one of his
defenses in the administrative proceedings was to admit "having made errors in his
submissions," arguing that those errors were "either harmless or not material."  AR(2) at 2.

permit him to "prove that he did not actually publish the contested images," *e.g.*, Pl. Opp. at 17,

but he cannot avoid the fact that the ALJ found that "[f]alse and/or fabricated images, graphs,

and data appear[ed]" in several publications and applications and that Dr. Brodie bore

"responsibility for assuring that what he published or attempted to publish was true and

accurate," AR(2) at 6.[5]  Judge Boasberg rejected Dr. Brodie's challenges to that decision in

*Brodie II*, explicitly finding that there was sufficient evidence to support the findings of research

misconduct and that the debarment decision was not arbitrary or capricious.  *See* 796 F. Supp. 2d

at 155; *see also id.* at 154 ("Without the publication, the falsification or fabrication would never

have the opportunity to misinform the reader.  It seems eminently reasonable, therefore, for

'fabrication' and 'falsification' to include the knowing publication of false or fabricated images,

and the Court will defer to such an interpretation of the regulation.").  Dr. Brodie did not appeal.

     In the instant matter, Dr. Brodie insists that his laptop is material to his defense

and that without it he will be unable to prove he did not fabricate or falsify any of the images.

*See e.g.*, Compl. ¶ 40.  But the ALJ's decision that Dr. Brodie's laptop is immaterial, upheld in

*Brodie II*, makes that claim unavailing.  Accordingly, collateral estoppel bars Dr. Brodie's

claims.

---

[5] The weakness of Dr. Brodie's arguments is revealed by their inherent contradictions.  For example, Dr. Brodie argues that "[g]aining access to the primary source data stored on Dr. Brodie's personal laptop computer was, and is, critical to Dr. Brodie's defense" because "[t]he laptop would show conclusively" that "many of ORI's images did not match the images that were included in the final versions of Dr. Brodie's journal and grant submissions" and that "some of the images were subject to commonly-accepted scientific techniques to represent data, but were not false distortions of the data as ORI alleged."  Pl. Opp. at 19.  As discussed above, if Dr. Brodie truly believed the laptop were critical to his defense, it behooved him to have complained of its absence years ago.

### D. *Brady* Is Inapplicable

Even if *res judicata* and collateral estoppel did not apply, the Court finds that *Brady* and its progeny do not apply in this civil context.[6]  Thus, summary judgment will be granted to the Defendants.  *Brady* does not apply in civil cases except in rare situations, such as when a person's liberty is at stake.  *See United States v. Project on Gov't Oversight* ("*POGO*"), 839 F. Supp. 2d 330, 342–43 (D.D.C. 2012).  With only three exceptions, detailed below, courts uniformly have declined to apply *Brady* in civil cases.  *Id.* at 341 (collecting cases and observing that the court had "only located three civil cases where a court has held that *Brady* applies," all involving "unusual set[s] of circumstances").

In *Demjanjuk v. Petrovsky*, 10 F.3d 338 (6th Cir. 1993), the court extended *Brady* requirements to a denaturalization and extradition case involving a Nazi war criminal, who was subject to extradition to face trial on a charge carrying the death penalty.  *Demjanjuk*, 10 F.3d at 353.  The court reasoned that "[t]he consequences of denaturalization and extradition equal or exceed those of most criminal convictions."  *Id.* at 354.  Thus, due to the extreme consequences of the proceeding, the *Demjanjuk* court found that *Brady* protections applied.  The Sixth Circuit has expressly cautioned that *Demjanjuk* "involved an unusual set of circumstances" and warned against extending its holding.  *See Extradition of Drayer*, 190 F.3d 410, 414 (6th Cir. 1999)).

*United States v. Edwards*, 777 F. Supp. 2d 985 (E.D.N.C. 2011), extended *Brady* requirements to civil commitment hearings under 18 U.S.C. § 4248 because "[a]t issue is not a claim for damages or equitable relief[;] [i]nstead, the issue is whether someone will be locked

---

[6] For the first time in his reply brief, Dr. Brodie argues that, in addition to *Brady*, ORI regulations required ORI to require the University to obtain and produce the laptop.  *See* Pl. Reply [Dkt. 20] at 2–4 (citing, *inter alia*, 42 C.F.R. § 93.505).  This argument is waived because it was raised for the first time in Dr. Brodie's reply.  "Issues may not be raised for the first time in a reply brief."  *Rollings Envtl. Servs. Inc. v. E.P.A.*, 937 F.2d 649, 653 (D.C. Cir. 1991).  Moreover, it is barred by *res judicata* and collateral estoppel for the reasons set forth above.

away." *Edwards*, 777 F. Supp. 2d at 994.  Analogizing to *Demjanjuk*, the *Edwards* court reasoned that, like denaturalization and extradition proceedings, civil commitment hearings hold consequences similar to, or worse than, criminal trials.  *Id*. at 997.

Finally, in *EEOC v. Los Alamos Constructors, Inc.*, 382 F. Supp. 1373 (D.N.M. 1974), the government alleged that the defendant had committed discriminatory employment practices.  The court characterized the government's pleading as a "skeleton complaint" and found that the "government's litigation tactics [were] egregious or designed to make the case virtually impossible to defend."  *Id.* at 1374.  As a result, the court extended *Brady* to require production of exculpatory information.

In *POGO*, a recent case in this district, the defendant was charged with a civil violation of 18 U.S.C. § 209, which prohibits paying supplemental income to federal employees and bars federal employees from accepting such payments.  839 F. Supp. 2d at 332–33.  After surveying the law on application of *Brady* to civil proceedings, the *POGO* court found that *Brady* did not apply because the civil enforcement proceeding did not fit the "unusual set of circumstances" required by *Demjanjuk*, *Edwards*, and *Los Alamos*.  *See POGO*, 839 F. Supp. 2d at 342–43.  Even though the defendant claimed that the government had failed to disclose exculpatory evidence, improperly coached a witness, and elicited perjury, the case was "more like ordinary civil cases where *Brady* has been found not to apply than it is like the rare exceptions."  *Id.* at 337, 343.  *POGO* also reasoned that policy reasons weighed against applying *Brady* because, unlike criminal prosecutions where *Brady* is essential to protect constitutional rights, civil litigants can use discovery to obtain any information that appears "reasonably calculated to lead to the discovery of admissible evidence."  *Id.* at 343 (citing, *inter alia*, Fed. R. Civ. P. 26(b)(1)).

The rationale of *POGO* applies equally with respect to the administrative debarment proceeding here.  Many courts have rejected arguments similar to Dr. Brodie's, finding that *Brady* does not apply "in the context of administrative hearings."  *See, e.g.*, *United States ex rel. (Redacted) v. (Redacted)*, 209 F.R.D. 475, 481 (D. Utah 2001) (collecting cases). Dr. Brodie's debarment does not constitute a unique set of circumstances that justifies applying *Brady*.  While Dr. Brodie contends that debarment "carries the stigma of a criminal conviction, such as fraud," he alleges his primary loss from the debarment was "his reputation, his ability to practice in his chosen profession, and his ability to earn a livelihood."  Compl. ¶¶ 44–45.  These losses are precisely the kind that the court in *POGO* decided did not warrant applying *Brady* to that civil proceeding.  *See POGO*, 839 F. Supp. 2d at 343 ("What is at stake in this case is money and reputation, not 'whether someone will be locked away.'" (quoting *Edwards*, 777 F. Supp. 2d at 994)).  Additionally, while Dr. Brodie did not have access to his personal laptop during the administrative proceedings, he did not face the kind of problems impairing the defense in *Los Alamos*, which was defending itself "against nothing but a phantom legal conclusion sketched out in the complaint," essentially tilting at windmills in the fog.  382 F. Supp. at 1374.  ORI produced "four boxes of documents, 16 CD-Roms and one computer hard drive" in response to Dr. Brodie's discovery requests.  Defs. Mot. at 9. Therefore, the facts in the instant case do not warrant extending *Brady* to apply to this civil proceeding.

## IV. CONCLUSION

Dr. Brodie already challenged his debarment in *Brodie I* and *II*.  *Res judicata* and collateral estoppel bar all of Dr. Brodie's current claims against HHS.  In addition, *Brady* protections did not extend to these administrative debarment proceedings before ORI. Accordingly, Defendants' motion for summary judgment will be granted, and Dr. Brodie's cross-motion for summary judgment will be denied.

19

A memorializing Order accompanies this Opinion.

Date: June 27, 2013                                   _____/s/_____
                                                      ROSEMARY M. COLLYER
                                                      United States District Judge